ROBERT E. ALLEN (State Bar No. 166589)
rallen@glaserweil.com
THOMAS P. BURKE JR. (State Bar No. 288261)
tburke@glaserweil.com
CHRISTOPHER N. MCANDREW (State Bar No. 324759)
cmcandrew@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:  (310) 556-2920

*Attorneys for Plaintiffs*
*Hannah Ann Sluss and Hannah Ann Corp.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNAH ANN SLUSS, an individual, and HANNAH ANN CORP., a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY, INC., an Ohio corporation, CVS PHARMACY, INC., a Rhode Island corporation; TARGET CORP., a Minnesota corporation; WALMART INC., an Arkansas corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. **Direct Copyright Infringement**<br>2. **Vicarious Copyright Infringement**<br>3. **Contributory Copyright Infringement**<br>4. **False Endorsement under the Lanham Act (15 U.S.C. § 1125(A))**<br>5. **Violation Of California Civil Code § 3344**<br>6. **Violation Of Common Law Right Of Publicity**<br>7. **Unfair Business Practices Pursuant To Bus. & Prof. Code § 17200**<br><br>**JURY TRIAL DEMANDED** |

Glaser Weil

Plaintiffs Hannah Ann Sluss ("Ms. Sluss") and Hannah Ann Corp. ("HAC") (collectively, "Plaintiffs"), by and through her undersigned counsel, hereby file this Complaint for:  (1) Direct Copyright Infringement; (2) Vicarious Copyright Infringement; (3) Contributory Copyright Infringement; (4) False Endorsement under the Lanham Act (15 U.S.C. § 1125(A)); (5) Violation of California Civil Code § 3344; (6) Violation of Common Law Right of Publicity; and (7) Unfair Business Practices Pursuant to Bus. & Prof. Code § 17200, against Defendant Proctor & Gamble Company, Inc., ("P&G" or "Defendant") and DOES 1 to 10.

For its Complaint, Plaintiffs allege as follows:

## INTRODUCTION

1.      Hannah Ann Sluss began her career as a model, working to help companies promote their products and engage with consumers. Unfortunately, one of those companies, P&G, used Ms. Sluss's name, image and likeness well in excess of its license to do so, including beyond its term and beyond the agreed usage by exploiting Ms. Sluss's rights on multiple sizes and on multiple products, and on off-packaging materials, such as in advertising and promotion.

2.      In fact, shortly after the license expired in 2019, Ms. Sluss had appeared and was one of the final contestants on the network television program *The Bachelor*, resulting in an explosion in her popularity and, thus, a huge increase in her market rate for the use of her name, likeness and image.  Nevertheless, even after P&G was notified that it's license to use Ms. Sluss's rights had expired, P&G continued to do so anyway, and continued making substantial profits off of the use of Ms. Sluss's image and likeness.

3.      In addition to impermissibly exploiting Ms. Sluss's rights, P&G also exceeding the scope of the license to use the photograph of Ms. Sluss that was used on P&G's packaging, including by using it beyond the license term and beyond the agreed usage by exploiting the photograph on multiple sizes and on multiple products, and on off-packaging materials, such as in advertising and promotion..

Glaser Weil

4.      Plaintiffs therefore seek for P&G to be held accountable, to pay Plaintiffs for the damages P&G has caused by its unauthorized uses, and to disgorge any profits it made therefrom.

## THE PARTIES

5.      Plaintiff Hannah Ann Sluss is an individual who is a citizen and resident of California and resides in the County of Los Angeles.

6.      Plaintiff Hannah Ann Corp. is a corporation organized and existing under the laws of the State of California and is registered with the California Secretary of State and doing business therein.  Plaintiff Hannah Ann Corp. has its principal place of business in the County of Los Angeles.

7.      Defendant Proctor & Gamble Company, Inc. is a corporation organized and existing under the law of the State of Ohio and is registered with the Ohio Secretary of State and doing business therein. Defendant Proctor & Gamble Company, Inc. has its principal place of business at 1 Proctor and Gamble Plaza, Cincinnati, Ohio 45202.

8.      Defendant CVS Pharmacy, Inc. ("CVS") is a Rhode Island corporation with its principal place of business at 1 CVS Drive, Woonsocket, Rhode Island, with retail stores throughout California, including, without limitation, in Los Angeles County.  The Court has personal jurisdiction over CVS in that CVS has multiple retail stores in Los Angeles County, CVS engaged in tortious conduct in California, and CVS's conduct causes injury to Sluss in California.  Venue of this action is proper in Los Angeles County in that CVS maintains multiple retail stores in Los Angeles County.

9.      Defendant Target Corporation ("Target") is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota, with retail stores throughout California, including, without limitation, in Los Angeles County.  The Court has personal jurisdiction over Target in that Target has multiple retail stores in Los Angeles County, Target engaged in tortious conduct in California,

Glaser Weil

2056001

and Target's conduct causes injury to Sluss in California.  Venue of this action is proper in Los Angeles County in that Target maintains multiple retail stores in Los Angeles County.

10.    Defendant Walmart Inc. ("Walmart") is a Delaware corporation with its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas, with retail stores throughout California, including, without limitation, in Los Angeles County. The Court has personal jurisdiction over Walmart in that Walmart has multiple retail stores in Los Angeles County, Walmart engaged in tortious conduct in California, and Walmart's conduct causes injury to Sluss in California.  Venue of this action is proper in Los Angeles County in that Walmart maintains multiple retail stores in Los Angeles County.

11.    Defendants sued herein as DOES 1 to 10, inclusive, are unidentified persons (whether corporate, individual, or otherwise) and are responsible in some manner for the acts, omissions, practices, and conduct set forth in this complaint. Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of the fictitiously named Defendants when the same have been ascertained.

12.    Plaintiff is informed, believes, and thereupon alleges that each of the Defendants, including DOES 1 to 10, inclusive, were at all times relevant herein, responsible in some way and manner for the acts, omissions, damages and injuries alleged herein and/or ratified and/or authorized such conduct and/or acted as the agent, servant, employee, or partner of each of the remaining Defendants, and were acting within the course and scope of such agency, service, employment, or partnership, and with respect to the limited liability company defendants, an officer, director, or managing agent authorized or ratified the wrongful conduct complained of or was personally guilty of oppression or malice.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under an Act of Congress relating

2056001

to copyrights, specifically 17 U.S.C. §§ 101 *et seq*.  This Court also has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

14.     This Court has personal jurisdiction over Defendants in this action because Defendants have committed acts within this District giving rise to this action, have offices and factories in this District, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through intermediaries or agents, have committed and continue to commit acts of infringement in this District by, among other things, displaying Plaintiff's copyrighted photograph(s) without Plaintiff's permission.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this judicial district.

## FACTUAL BACKGROUND

### Publicity Rights

16.     Hannah Ann Sluss s earns her living as a model and social influencer, working with companies to promote their products or services. Even before her time on the famed reality television show, *The Bachelor*, Ms. Sluss earned her living as a model.  As a model, Ms. Sluss started building her following of loyal fans throughout her social media accounts.

17.      Understanding the opportunity to grow her career, Ms. Sluss began working with modeling agencies to assist her. Beyond her own recommendations that were exhibited on her social media accounts, Ms. Sluss wished to allow companies that she believed in and trusted to use her image and likeness to promote certain products and services. To accomplish this, Ms. Sluss authorized her agent, New View Management Group Inc. d/b/a NV Model & Talent ("New View") to license certain

Glaser Weil

rights in her name, image, and likeness (the "Publicity Rights") to Jeremy Kramer Photography ("JKP").

18.     Consistent with industry custom and practice, New View licensed the Publicity Rights to JKP pursuant to an invoice dated September 30, 2017 (the "License") for use in one composite photograph (the "Photo") to be used on the packaging of **one** consumer product (the "Rights Usage") for the period October 1, 2017 to October 1, 2019 (the "Rights Term"). A copy of the License is attached hereto as <u>Exhibit A</u>.

19.     The industry custom and practice is that the right to use publicity rights in a photograph is limited to a single product package unless otherwise explicitly authorized, and the License did not explicitly authorize the use of the Publicity Rights on the packaging of more than one product.

20.     Immediately below is a copy of the Photo:



21.     The License did not provide for an extension of the term for so-called "on-shelf" or "depleted inventory" of the products sold or advertised using the

Glaser Weil

1    Publicity Rights.

2        22.    After receiving the License, JKP licensed the Photo and sublicensed the

3    Publicity Rights contained in the Photo to Landor, LLC, who then sublicensed the

4    Photo to P&G (collectively, the "Sublicense").  The Sublicense granted Landor/P&G

5    the right to exploit the Photo on the packaging of one product (the "Photo Usage")

6    during the two (2) year period following the product/campaign launch (the "Photo

7    Term"), and purported to sublicense to Landor/P&G the Publicity Rights during the

8    Photo Term. A copy of the Sublicense is attached hereto as Exhibit B.

9        23.    However, unknown to Ms. Sluss or New View, and contrary to the

10   License, P&G chose to exploit the Photo not on the packaging of one Downy product,

11   but on at least six (6) different Downy products, and on multiple size containers for

12   each of those products, each bearing a separate SKU:

13

14                      (continued on the following page)

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ///

2056001

1

2

3

4       (1) Downy Odor Protect Active Fresh

5            Liquid Fabric Deodorizer and Fabric

6            Conditioner ("Active Liquid");

7

8

9

10



11

12

13

14       (2) Downy Odor Protect April Fresh

15            Liquid Fabric Deodorizer and Fabric

16            Conditioner ("April Liquid");

17

18

19



20

21

22

23       (3) Downy Odor Protect Active Fresh In-

24            Wash Scent Booster Beads ("Active

25            Beads");

26

27

28



Glaser Weil

2056001

Glaser Weil

1

2

3

4     (4) Downy Odor Protect April Fresh In-

5          Wash Scent Booster Beads ("April

6          Beads");

7

8

9



10

11

12    (5) Downy Ultra Odor Protect Active

13         Fresh Liquid Fabric Conditioner

14         ("Ultra Active Liquid"); and

15

16

17



18

19

20

21    (6) Downy Ultra Odor Protect April

22         Fresh Liquid Fabric Conditioner

23         ("Ultra April Liquid")

24

25



26

27

28  (Active Liquid, April Liquid, Active Beads, April Beads, Ultra Active Liquid and

2056001

1  Ultra April Liquid are referred collectively as the "Downy Products").

2      24.    P&G was also exploiting the Publicity Rights as embodied in the Photo

3  on the back of each of the Downy Products to advertise and promote one of the other

4  Downy Products, even though neither Ms. Sluss or New View had granted P&G the

5  right to do so.  For example, the back of April Beads advertises April Liquid:

6      25.    P&G was also exploiting the Publicity Rights as embodied in the Photo

7  in both print and digital advertising and promotion for the Downy Products that was



24 not on the packaging (so-called "off-packaging"), even though neither Ms. Sluss or

25 New View had granted P&G the right to do so.

26      26.    In terms of P&G's off-packaging uses, P&G exploited the Publicity

27 Rights as embodied in the Photo in at least six different advertising campaigns. These

28 uses, all without Ms. Sluss's authorization or consent, including:

2056001

(1) multiple "bead bottle" advertisements:

 

(2) Comparative advertisements, showing the old and the new packaging:



(3) the *Smell fresh all day, 24 hours of odor protection* campaign:

 

2056001

1    (4) the *Odors never stood a chance* campaign:







2056001

(5) the *Life gets stinky* campaign:







(6) The *Keep Things Fresh* campaign:



13
COMPLAINT

2056001

(collectively, the "Campaigns"). While each of these uses, if properly licensed, would have cost P&G additional money beyond the License, the *Life Gets Stinky* campaign is especially egregious because it associated Ms. Sluss with the word "stinky." As is customary in the advertising industry, such a use, similar to a personal hygiene product, would command a much higher fee had it been disclosed and approved by Ms. Sluss.

27.     In addition to exploiting the Publicity Rights beyond the Rights Usage in the License, P&G exploited the Publicity Rights in the Photo for each of the Downy Products after the expiration of the Rights Term of the License. As described above, New View, on behalf of Ms. Sluss, licensed the Publicity Rights in the Photo for a term of October 1, 2017 to October 1, 2019.

28.     In January 2020, Ms. Sluss began appearing on the reality-dating television show *The Bachelor*. Ms. Sluss was heavily featured throughout the series and her followers on Instagram exploded. Ultimately, Ms. Sluss was a participant on the show for the entire season and was proposed to by the Bachelor, Peter Weber. After some unfortunate post-series drama by Mr. Weber, Ms. Sluss's following continued to rapidly expand to approximately 1.4 million followers.

29.     Given this huge expansion of her following, Ms. Sluss's team worked diligently to make sure that she was being protected on every front. It was during this time that Ms. Sluss discovered that P&G had still been exploiting her Publicity Rights in the Photo well after the Rights Term of the License. Given this, New View emailed P&G on January 13, 2020 to inform it of the continued infringing uses.

30.     In response, P&G disputed that they had exceeded the scope of the License in any way – arguing that it was permitted to use the Photo for packaging on multiple P&G product families, off-packaging uses, and in print and digital advertisements and promotions. In arguing this, P&G claimed that it had obtained additional rights (which allowed for the infringing uses) under the Sublicense. In addition, P&G argued that it did not exceed the Rights Term of the License because

the Publicity Rights in the Photo would not expire until two years after the campaign launch. Given this, P&G argued, it had the right to use and exploit the Publicity Rights in the Photo until June 2020 (as P&G argued it did not launch this campaign until June 2018).

31.     Each of P&G's arguments are without merit. Any additional rights granted under the Sublicense is irrelevant as to the Publicity Rights granted by Ms. Sluss in the License.  For example, the License granted the Publicity Rights in the Photo for use of one image for one product packaging only.  (Although the License also licensed the use of three different photographs for use in print and web images, P&G never used those different photographs.)  Contrary to P&G's claims, JKP simply could not have granted rights to Landor/P&G in the Sublicense that JKP never had acquired from Ms. Sluss.

32.     Additionally, the License explicitly granted the Publicity Rights in the Photo only for the Rights Term (i.e, the period October 1, 2017 to October 1, 2019). Nothing in the License allows for the exploitation of the Publicity Rights in the Photo to last up until two years after a certain campaign launch (i.e., the Photo Term). Any such language in the Sublicense is irrelevant. Even assuming that P&G's arguments were correct, including that P&G did not start exploiting the Publicity Rights until June 2018 (which is not true), P&G would have been required to cease all exploitation of the Publicity Rights in the Photo in June 2020. But P&G actually started exploiting the Publicity Rights at least by March 23, 2018.  P&G then continued to exploit and use the Publicity Rights in the Photo through July, 2020. Accordingly, even by P&G's own flawed theory, it is liable for violating Ms. Sluss's Publicity Rights.

33.     Even after January 13, 2020 when New View informed P&G of its infringing uses of Ms. Sluss's Publicity Rights, and even after Ms. Sluss provided P&G the reasons why P&G's arguments were incorrect, P&G continued to exploit and use the Publicity Rights in the Photo. P&G took no action to stop exploiting the

Publicity Rights as embodied in the Photo from additional packaging, off-packaging uses, on any advertisements or promotions or on its own website. In addition, on information and belief, P&G never informed its customers of its infringing uses and its customers continued to exploit the Publicity Rights in the Photo in excess of the Rights Usage and well after the expiration of the Rights Term.

34. Ms. Sluss, as a successful model and personality in the entertainment space who has spent years building up her image and reputation as a source of trustworthy and reliable recommendations, also commands a premium for her partnerships and use of her Publicity Rights in all media, including social media. Her followers, and the public alike, trust products and brands that they see her associated with. Any false association to brands and/or products severely harms Ms. Sluss's work and reputation. As such, Ms. Sluss seeks justice for P&G's impermissible use of her Publicity Rights as embodied in the Photo and P&G's attempts at false endorsement once the License had expired and after Sluss's popularity had exploded.

35. In addition to P&G's infringing uses of the Publicity Rights, P&G's biggest customers have also infringed those rights. CVS, Target and Walmart (individually and collectively, the "Distributors") continued to advertise, promote and sell Downy Products using the Publicity Rights, in excess of the Rights Usage and well after the expiration of the Rights Term. Additionally, each of the Distributors also utilized the Publicity Rights in the Photo off-packaging, in digital (and possibly print) advertising, also beyond the scope of the License.

**Copyright**

36. Jeremy Kramer is the photographer and creator of the Photo. On February 1, 2021, Mr. Kramer registered the Photo with the United States Copyright Office, registration number VA 2-235-534. A copy of the registration of the Photo is attached hereto as Exhibit C.

37. On June 1, 2021, Jeremy Kramer assigned the copyright in the Photo to Jeremy Kramer Photography, Inc. On July 19, 2021, Jeremy Kramer Photography,

Inc. assigned the copyright in the Photo to Ms. Sluss.  Effective as of July 30, 2020, Sluss assigned the copyright in the Photo to HAC.

38.    The industry custom and practice is that the right to use a photograph is limited to a single product package unless otherwise explicitly authorized and the Sublicense did not explicitly authorize the use of the Photo on the packaging of more than one product.  Each of the products embodying the Photo have a separate SKU and different graphics.

39.    The Sublicense only authorized use of the Photo on packaging.  While Landor/P&G contemplated the use of different photographs embodying the Publicity Rights in advertisements, those additional photographs were never used and there was never any negotiations to use the Photo on anything but packaging.  The final license agreement was set forth in the Sublicense, which granted solely the right to use the Photo on packaging and the additional photographs on print and web but excluding packaging.  It was never contemplated or discussed that the Photo would be used off-packaging.

40.    Additionally, P&G used the Photo off-package in the six (6) different Campaigns, all without authorization or consent.

41.    As stated above, the Photo Term of the Sublicense is two years from campaign launch, and P&G would know when it commenced using the Photo.  While P&G claims that it commenced its campaign in June, 2018, P&G, in fact, first started using the Photo at least by March 23, 2018, thereby making its uses after March 22, 2020 beyond the Photo Term  of the Sublicense.

42.    Notwithstanding that the Photo Term expired  no later than March 22, 2020, P&G continued to reproduce, display publicly and distribute the Photo, including on its website, after March 22, 2020.

43.    In addition to P&G's infringing uses of the Photo, P&G's biggest customers have also infringed those rights.  Each of the Distributors continued to advertise and promote Downy Products by reproducing, displaying publicly, creating

derivative works and distributing the Photo, after the expiration of the Photo Term of the Sublicense.  Additionally, each of the Distributors also reproduced, displayed publicly, created derivative works and distributed the Photo in excess of the Photo Usage under the Sublicense, including, without limitation, in off-packaging uses, in digital (and possibly print) advertising..

**FIRST CLAIM FOR RELIEF**

**(Direct Copyright Infringement, 17 U.S.C. § 501)**

**(Against All Defendants)**

44.    Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

45.    HAC is the sole copyright owner of the Photo and all rights associated with the Photo. The Photo is comprised of wholly original material and has been deemed copyrightable subject matter under the Copyright laws of the United States.

46.    JKP licensed the Photo to Landor and P&G pursuant to the Sublicense. The Sublicense solely allowed for the reproduction, public display and distribution of the Photo in connection with the Photo Usage (i.e., on the packaging of one product) and only during the Photo Term (i.e., for a term of 2 years from campaign launch, which would be no later than March 23, 2018).

47.    With full knowledge of the rights in the Photo, P&G infringed the copyright in the Photo by reproducing, displaying publicly, creating derivative works and/or distributing (and authorizing the reproduction, public display, creating derivative worksand distributing) the Photo in excess of the Photo Usage of the Sublicense on the multiple size containers of Downy Products' packaging, in digital and print advertisements and promotions, including the Campaigns, and on its websites.

48.    With full knowledge of the copyright in the Photo, P&G has infringed the copyright in the Photo by reproducing, displaying publicly, creating derivative works and/or distributing the Photo after the expiration of the Photo Term of the

2056001

Glaser Weil

Sublicense.

49.   On information and belief, each of P&G's customers (including, without limitation, each of the Distributors) has infringed the copyright in the Photo by reproducing, creating derivative works, displaying and distributing the Photo in advertising and marketing materials made available to the general public for consumer products including, without limitation, the Downy Products, all without HAC's consent, approval or license and beyond the scope of the Photo Usage in the Sublicense.

50.   Defendants' actions constitute a direct violation of the exclusive rights under copyright with respect to the Photo under 17 U.S.C. § 106.

51.   Each of the Defendants has benefitted from its infringement of the Photo through product sales, brand promotion, and corporate goodwill. As a result of P&G's infringing activities, HAC has suffered monetary damages, as well as damages to her goodwill and reputation.

52.   Pursuant to 17 U.S.C. § 504(b), HAC is entitled to actual damages, including P&G's profits from infringement in connection with the Photo, in an amount to be proven at trial.

53.   Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause HAC great and irreparable injury that cannot fully be compensated or measured in money. HAC has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, HAC is entitled to injunctive relief prohibiting P&G from further infringing the Photo's copyright, ordering P&G impound and destroy all copies of P&G's products and advertisements made in violation of HAC's exclusive rights, and ordering P&G recall from all distributors and wholesale customers all copies of P&G's products and advertisements made in violation of HAC's exclusive rights.

///

///

2056001

**SECOND CLAIM FOR RELIEF**

**(Vicarious Copyright Infringement, 17 U.S.C. § 501)**

**(Against P&G)**

54.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

55.     The Distributors displayed publicly and distributed the Downy Products, as well as create derivative works, inclusive of the Photo, to advertise and market consumer products, and then reproduce, display publicly and distribute those derivative works did so without the consent, approval or license of HAC.

56.     Each unauthorized reproduction, creation of a derivative work, public display or distribution of the Photo by each Distributor constitutes a separate and distinct act of direct infringement.

57.     P&G had and continues to have the right and ability to supervise and control the infringing acts of the Distributors who have directly infringed the Photo in connection with the Downy Products.  P&G had and has the legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so, considering that the Distributors were selling the Downy Products, which they received directly from P&G.  Further, on information and belief, the Distributors directly received from P&G the artwork for each of the Downy Products and/or digital files of the Photo so that they, in turn, could create derivative work advertisements and other marketing materials inclusive of the Photo, and then reproduce, display publicly and distribute those advertisements and marketing materials.

58.     P&G obtained a direct financial benefit from the infringing activities of the Distributors with respect to each of the Downy Products and other P&G products that were embodied in advertisements and marketing materials, created by both by P&G and the Distributors, inclusive of the Photo.  The Photo drew retail consumers to purchase the Downy Products or other P&G products, which resulted in additional

Glaser Weil

2056001

revenue to P&G.

59.     The actions of P&G constitute vicarious copyright infringement.

60.     Pursuant to 17 U.S.C. § 504(b), HAC is entitled to its actual damages, including P&G and each of the Distributor's profits from infringement in connection with the Images, in an amount to be proven at trial.

61.     P&G and each of the Distributor's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause HAC great and irreparable injury that cannot fully be compensated or measured in money.  HAC has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, HAC is entitled to injunctive relief prohibiting P&G and each of the Distributors from further infringing HAC's copyrights, ordering the Defendants to impound and destroy all copies of P&G products made in violation of HAC's exclusive rights, and ordering Defendants to recall from all distributors and wholesale customers all copies of P&G products made in violation of HAC's exclusive rights.

## THIRD CLAIM FOR RELIEF

### (Contributory Copyright Infringement, 17 U.S.C. § 501)

### (Against P&G)

62.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

63.     The Distributors displayed publicly and distributed the Downy Products, as well as create derivative works, inclusive of the Photo, to advertise and market consumer products, and then reproduce, display publicly and distribute those derivative works do so without the consent, approval or license of HAC.

64.     Each unauthorized reproduction, creation of a derivative work, public display or distribution of the Photo by each Distributor constitutes a separate and distinct act of direct infringement.

65.     Through its conduct alleged herein, P&G knowingly and systematically induced, caused, materially contributed to, actively encouraged and participated in the

infringing reproduction, creation of derivative works, public display and distribution of the Photo by the Distributors.  Specifically, P&G sold each of the Downy Products to the Distributors with the sole intention of the Distributors then displaying publicly and distributing to the public the Downy Products, inclusive of the Photo. Furthermore, P&G (either directly or through its agents) distributed the artwork for the Downy Products and/or digital copies of the Photo for the express purpose of the Distributors creating their own derivative work advertising and marketing materials, inclusive of the Photo, not only for the Downy Products but also for other consumer products, which the Distributors then reproduced, publicly displayed and distributed.

66.     P&G knew or should have known that by distributing and making these Downy Products inclusive of the Photo available to them, the Distributors would be publicly displaying and distributing the Photo.

67.     P&G knew or should have known that by distributing and making available to the Distributors the artwork for the Downy Products and/or digital copies of the Photo, that the Distributors would create derivative work advertisement and marketing materials, inclusive of the Photo, then reproduce, publicly display and distribute those materials.

68.     P&G's actions constitute contributory copyright infringement.

69.     P&G has benefitted from its contributory infringement of the Photo in the form of product sales, brand promotion, and corporate goodwill.  As a result of P&G's contributory infringement, HAC has suffered monetary damages as well as damages to their goodwill and reputation.

70.     Pursuant to 17 U.S.C. § 504(b), HAC is entitled to its actual damages, including P&G and each of the Distributor's profits from infringement in connection with the Images, in an amount to be proven at trial.

71.     P&G and each of the Distributor's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause HAC great and irreparable injury that cannot fully be compensated or measured in money.  HAC has

2056001

no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, HAC is entitled to injunctive relief prohibiting P&G from further infringing HAC's copyrights, ordering the Defendants to impound and destroy all copies of P&G products made in violation of HAC's exclusive rights, and ordering Defendants to recall from all distributors and wholesale customers all copies of P&G products made in violation of HAC's exclusive rights.

## FOURTH CLAIM FOR RELIEF

**(False Endorsement under the Lanham Act (15 U.S.C. § 1125(A))**

**(Against P&G)**

72.    Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

73.    Ms. Sluss has spent years building her personal brand and following through her social media presence and career in entertainment. Specifically, Ms. Sluss spent years as a professional model and working directly with brands and companies to promote or expand their brands and products. Continuing with her successes, Ms. Sluss appeared on the reality-dating show *The Bachelor* and gained a significant following. Because of this, Ms. Sluss is heavily sought after for endorsement deals, speaking engagements, and general entertainment events. As such, Ms. Sluss's Publicity Rights are well-known throughout social media and the general public and represent the main source of Ms. Sluss's livelihood.

74.    Ms. Sluss is the exclusive owner of the statutory and common law rights associated with her Publicity Rights necessary for use in any advertising or promotional purposes.

75.    P&G used and exploited Ms. Sluss's Publicity Rights without permission or consent by exceeding the usage and term of the License. Specifically, the License allowed for the Publicity Rights to be exploited on the packaging of one product for during the Rights Term (October 1, 2017 to October 1, 2019). P&G exceeded both the Rights Usage and the Rights Term of the License by using the Publicity Rights in the

Photo on multiple products' packaging, using the Publicity Rights in the Photo in both digital and print advertisements and promotions, and continuing to exploit the Publicity Rights in the Photo after October 1, 2019. Given that P&G's right to use the Publicity Rights in the Photo are explicitly laid out in the License, the above uses are without Ms. Sluss's consent.

76.     P&G's impermissible uses of Ms. Sluss's Publicity Rights constitute false or misleading representations of fact to falsely imply an endorsement and approval by Ms. Sluss of P&G and the Downy Products. P&G's impermissible uses of Ms. Sluss's Publicity Rights on P&G products' packaging, as well as in digital and print advertisements and promotions, are likely to cause confusion among consumers such that consumers would assume that Ms. Sluss continued to endorse the Downy Products and any products in the Campaigns.

77.     As a direct and proximate result of P&G's acts of false endorsement, Ms. Sluss has suffered harm by the false association with P&G, the Downy Products and other P&G products used in the Campaigns. As described above, Ms. Sluss has spent years building her reputation with her followers, as well as the general public, as a trustworthy and reliable source for recommendations. P&G's impermissible uses of the Publicity Rights in the Photo created a false association and false endorsement of the these products by Ms. Sluss.

78.     P&G's conduct was a substantial factor in causing these harms to Ms. Sluss.

## FIFTH CLAIM FOR RELIEF

### (Violation Of California Civil Code § 3344)

### (Against All Defendants)

79.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

80.     Defendants knowingly used and exploited Ms. Sluss's Publicity Rights on Downy Products' packaging and in both print and digital advertising/promotional

Glaser Weil

1   campaigns.

2       81.     Defendants' use of Ms. Sluss's Publicity Rights did not occur in

3   connections with a news, public affairs, or sports broadcast or account, or with a

4   political campaign.

5       82.     Defendants did not have Ms. Sluss's consent to use and exploit her

6   Publicity Rights beyond the Rights Usage or the Rights Term of the License.

7   Specifically, P&G exceeded both the Rights Usage and Rights Term of the License by

8   using the Publicity Rights on the packaging of more than one Downy Product, on

9   multiple sizes of packaging, in both digital and print advertising/promotional

10  campaigns, and on its website and by continuing to exploit the Publicity Rights after

11  the Rights Term. Given that the right to use the Publicity Rights in the Photo are

12  explicitly laid out in the License, the above uses are without Ms. Sluss's consent.

13      83.     On information and belief, each of the Distributors exceeded the scope of

14  the License by using the Publicity Rights beyond the Rights Usage and the Rights

15  Term.  Specifically, each of the Distributors exceeded both the Rights Usage and

16  Rights Term of the License by using the Publicity Rights in connection with the

17  advertising and promotion of Downy Products' packaging, using the Publicity Rights

18  in both digital and print advertising/promotional campaigns, and continuing to exploit

19  the Publicity Rights after the Rights Term. Given that the right to use the Publicity

20  Rights in the Photo are explicitly laid out in the License, the above uses are without

21  Ms. Sluss's consent.

22      84.     Defendants' uses of the Publicity Rights are directly connected to

23  Defendants' commercial purpose of advertising and selling products to consumers.

24      85.     Due to Defendants' conduct, Ms. Sluss was harmed by being deprived of

25  full and fair compensation for all of Defendants' uses of her Publicity Rights to

26  advertise and sell products in an amount to be proven at trial. In addition, Ms. Sluss

27  suffered humiliation and embarrassment through the use of her Publicity Rights in

28  connection with an advertising campaign that relates Ms. Sluss to the word "stinky."

86.     Defendants' conduct was a substantial factor in causing these harms to Ms. Sluss.

## SIXTH CLAIM FOR RELIEF

### (Violation Of Common Law Right Of Publicity)

### (Against All Defendants)

87.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

88.     Defendants used and exploited Ms. Sluss's Publicity Rights on Downy Products' product packaging and in both print and digital advertising/promotional campaigns.

89.     Defendants' use of Ms. Sluss's Publicity Rights did not occur in connections with a news, public affairs, or sports broadcast or account, or with a political campaign.

90.     Defendants did not have Ms. Sluss's consent to use and exploit her Publicity Rights beyond the Rights Usage and the Rights Term of the License. Specifically, P&G exceeded both the Rights Usage and Rights Term of the License by using the Publicity Rights on the packaging of more than one Downy Product, on multiple sizes of packaging, in both digital and print advertising/promotional campaigns, and on its website and by continuing to exploit the Publicity Rights after the Rights Term. Given that Defendant's right to use the Publicity Rights in the Photo are explicitly laid out in the License, the above uses are without Ms. Sluss's consent.

91.     On information and belief, each of the Distributors exceeded the scope of the License by using the Publicity Rights beyond the Rights Usage and the Rights Term.  Specifically, each of the Distributors exceeded both the Rights Usage and Rights Term of the License by using the Publicity Rights in connection with the advertising and promotion of Downy Products' packaging, using the Publicity Rights in both digital and print advertising/promotional campaigns and on its website, and by continuing to exploit the Publicity Rights after the Rights Term. Given that the right

2056001

to use the Publicity Rights in the Photo are explicitly laid out in the License, the above uses are without Ms. Sluss's consent.

92.    Due to Defendants' conduct, Ms. Sluss was harmed by being deprived of full and fair compensation for all of Defendant's' uses of her Publicity Rights to advertise and sell products in an amount to be proven at trial.

93.    Defendants' conduct was a substantial factor in causing these harms to Ms. Sluss.

### SEVENTH CLAIM FOR RELIEF

**(Unfair Business Practices Pursuant To Bus. & Prof. Code § 17200)**

**(Against Defendant P&G)**

94.    Plaintiff hereby incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

95.    P&G has engaged in unlawful and unfair business practices in violation of Bus. & Prof. Code § 17200 by using and exploiting the Publicity Rights in the Photo beyond the Rights Usage and Rights Term of the License.  Specifically,. P&G exceeded both the Rights Usage and Rights Term of the License by using the Publicity Rights on multiple products' packaging, using the Publicity Rights in both digital and print advertising/promotional campaigns, and continuing to exploit the Publicity Rights after the Rights Term.

96.    P&G's impermissible uses of the Publicity Rights in the Photo constitute unlawful and unfair business practices as they would lead a reasonable consumer to believe that Ms. Sluss continued to be  associated or endorsing P&G's products. Since P&G was using Ms. Sluss's Publicity Rights without her consent, consumers are likely to be deceived into thinking Ms. Sluss continued to be associated with or endorsed the Downy Products, as well as the products included in the Campaigns. In addition, P&G's impermissible uses of the Publicity Rights in the Photo constitute unlawful and unfair business practices as P&G used Ms. Sluss's Publicity Rights for commercial purposes without providing for full and fair compensation.

97.     As a result of P&G's unlawful and unfair business practices, Ms. Sluss suffered an injury in fact by failing to receive full and fair compensation for the uses of her Publicity Rights in an amount to be proven at trial. In addition, Ms. Sluss was harmed by the false association with the Downy Products. As described above, Ms. Sluss has spent years building her reputation with her followers, as well as the general public, as a trustworthy and reliable source for recommendations. P&G's impermissible uses of the Publicity Rights in the Photo created a false association and false endorsement of the Downy Products by Ms. Sluss.

98.     P&G's conduct was a substantial factor in causing these harms to Ms. Sluss.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants be enjoined during the pendency of this action, and permanently enjoined from infringing the copyright in the Photo;

B. That the Court enter an injunctive order pursuant to 17 U.S.C. § 502 to require Defendants to recall all infringing copies of the Photo from each and every distributor and wholesale customer.

C. That the Court enter an order of impoundment pursuant to 17 U.S.C. § 503 to impound and destroy all infringing copies of the Photo that are in Defendants' possession, custody or control, either presently or in the future as the result of returns or any recall.

D. That Defendants be required to account for all gains, profits and advantages derived by Defendants through their direct, contributory and vicarious infringement of HAC's copyright.

E. That Defendants be required to pay to HAC their actual damages and Defendants' profits attributable to their direct, contributory and vicarious infringement of HAC's copyright in the Photo pursuant to 17 U.S.C. § 504(b), in such amounts as may be proven at trial.

2056001

F.  Other economic and consequential damages in an amount to be determined at trial;

G.  That Defendants be enjoined during the pendency of this action, and permanently enjoined from infringing Ms. Sluss's Publicity Rights;

H.  That Defendants be required to pay Sluss actual damages from their humiliation, embarrassment and mental distress from their unauthorized use of Sluss's Publicity Rights, in an amount to be proven at trial.

I.  That Defendants be required to pay Sluss any and all profits that the Defendants received from the use of Sluss's Publicity Rights that have not been taken into account with regard to the actual damages above, in an amount to be proven at trial; and

J.  That the Court award Sluss punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants for their unauthorized use of Sluss's Publicity Rights in an amount to be determined at trial;

K.  That the Court award Sluss pursuant to Cal. Cov. Code §3344(a) attorneys' fees, witness fees and the costs of litigation incurred by Sluss in an amount to be determined at trial;

L.  That the Court award Plaintiffs Pre and Post judgment interest at the maximum legal rate;

M.  That the Court award Plaintiffs costs of the suit incurred herein; and

N.  For such other and further relief as the Court deems just and proper.

DATED:  September 15, 2021          GLASER WEIL FINK HOWARD
                                    AVCHEN & SHAPIRO LLP


                                    By:  */s/ Robert E. Allen*
                                         ROBERT E. ALLEN
                                         THOMAS P. BURKE JR.
                                         CHRISTOPHER N. MCANDREW
                                         *Attorneys for Plaintiff*
                                         *Hannah Sluss and Hannah Ann Corp.*

2056001

1

## DEMAND FOR JURY TRIAL

2          Plaintiffs Hannah Ann Sluss and Hannah Ann Corp. demand a trial by jury of

3   the claims for relief so triable as alleged in this Complaint.

4    DATED:  September 15, 2021          GLASER WEIL FINK HOWARD
                                         AVCHEN & SHAPIRO LLP
5

6                                   By:  */s/ Robert E. Allen*
7                                        ROBERT E. ALLEN
8                                        THOMAS P. BURKE JR.
                                         CHRISTOPHER N. MCANDREW
9                                        *Attorneys for Plaintiff*
                                         *Hannah Sluss and Hannah Ann Corp.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2056001